Plymouth District Court
No. 7349

STATE OF NEW HAMPSHIRE

v.

NANCY SWAN

February 27, 1976

*David H. Souter,* attorney general, and *Richard B. McNamara,* attorney *(Mr. McNamara* orally), for the State.

*Deachman & Gruber* and *James A. Shuchman (Mr. Shuchman* orally) for the defendant.

GRIFFITH, J. The defendant, Nancy Swan, excepted to the denial by the Plymouth District Court of her motion to suppress evidence obtained as a result of an arrest and summons charging her with driving under the influence of intoxicating liquor on February 25, 1975. All questions of law raised by the defendant's exceptions were reserved and transferred by *Sawyer*, J.

The arrest, which the defendant challenges as being illegal and without authority, was made in Plymouth, New Hampshire, by one James Chase. Chase, a Waterville police officer, was also an "auxiliary policeman" of the town of Plymouth, appointed by the selectmen of that town. He first saw the defendant in Plymouth, where his only authority was as an auxiliary policeman.

The question we are asked to decide is whether an auxiliary policeman has the power to make an arrest without a warrant for a misdemeanor committed in his presence. We hold that he is so authorized under RSA ch. 594.

As the district court noted, neither the *New Hampshire Revised Statutes Annotated* nor the town ordinances of Plymouth define an auxiliary police officer nor specifically delineate his powers. However, RSA 594:10 I, which deals with arrest without a warrant, states that a "peace officer" may arrest without a warrant whenever he has reasonable ground to believe that the person to be arrested has committed a misdemeanor in his presence. RSA 594:1 III defines "peace officer" as used in chapter 594 as "*any* sheriff or deputy sheriff, mayor or city marshal, constable, *police officer* or watchman, member of the national guard acting under orders while in active state service ordered by the governor under RSA 110-A:6, or other person authorized to make arrests in a criminal case. (Emphasis added.) The words "any . . . police officer," which are to be construed according to their common and approved usage *(Floyd v. Verrette,* 79 N.H. 316, 317, 108 A. 693, 694 (1919)), must be taken to mean all police officers, regular, special and auxiliary. Similarly, RSA 105:3 states "[a]*ll* police officers are, by virtue of their appointment, constables and conservators of the peace." (Emphasis added.) Again, giving the word "all" its approved and ordinary usage, RSA 105:3 signifies that police officers of every description are "constables."

RSA 594:1 and 594:10 grant the power of arrest to an extensive list of persons, indicating a legislative intent to provide maximum protection to the community. *See O'Connor v. Bucklin,* 59 N.H. 589, 591 (1879). Our interpretation of these statutes to encompass auxiliary police officers is in accordance with that policy.

The defendant's reliance on RSA 107:19 is misplaced. That statute deals only with the power of civil defense auxiliary police to make warrantless arrests for violations of orders made pursuant to RSA ch. 107. No such order is involved here, and in any event, the trial court found that the appointment under which Chase was acting at the time of the arrest was that of auxiliary police officer with no reference to civil defense.

*Defendant's exceptions overruled.*

All concurred.